IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BILLY D. WAKEFIELD                                                                                    PLAINTIFF

        v.                              Civil No. 09-2129

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                   DEFENDANT

**MEMORANDUM OPINION**

**I.      Factual and Procedural Background**

        Plaintiff, Billy D. Wakefield, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").

        At the time of the alleged onset date, Plaintiff was 47 years old with a sixth grade education. Tr. 15, 56, 133, 255. He performed past relevant work as a tree trimmer. Tr. 35, 111-14, 136-38. Plaintiff protectively filed his DIB and SSI applications on July 18, 2007, alleging a disability onset date of July 18, 2006, due to arthritis, back and leg pain, tingling in his arms, mental retardation, and residuals from a motorcycle accident. Tr. 40-44, 47, 96-98, 101-04, 124, 129, 140, 163, 182-85.

        Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 58-63, 66-69. At Plaintiff's request, an administrative hearing was held on October 29, 2008. Tr. 11-39. Plaintiff was present at this hearing and represented by counsel. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on February 17, 2009, finding Plaintiff was not disabled within the

meaning of the Act. Tr. 47-57. Subsequently, the Appeals Council denied Plaintiff's Request for Review on September 11, 2009, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

## II.    Medical History

On May 17, 2007, Plaintiff was admitted to Summit Medical Center following a minor motorcycle accident. Tr. 186-202. Steven Nelson, M.D., treated him for superficial lacerations to his left eye and hand. Tr. 190. A CT of Plaintiff's cervical spine revealed degenerative changes at the lower three cervical levels, but no fractures or subluxations. Tr. 194. A CT of Plaintiff's brain revealed a fracture of the left superior orbital rim, with fragments displaced into the orbit. Tr. 195. No other abnormalities were noted. Tr. 195. X-rays of Plaintiff's left shoulder, wrists, chest, right knee, and right hand were all within normal limits. Tr. 196-201. An x-ray of Plaintiff's left hand showed degenerative changes at the interphalangeal joints of the fifth finger, but was otherwise normal. Tr. 202. Plaintiff was discharged and given a prescription for Percocet, Phenergan, and Keflex. Tr. 191. On May 25, 2007, Plaintiff underwent open reduction internal fixation of the left supraorbital rim fracture and a closed nasal fracture reduction. Tr. 224-33. The surgery was successful, and there is no evidence that Plaintiff received any follow-up care. Tr. 224-33.

In 2006 and 2007, Plaintiff was treated by C.J. Arendall, M.D., for depression and arm, wrist, leg, and back pain. Tr. 203-13. X-rays of Plaintiff lumbar spine dated July 18, 2007, revealed degenerative disc space narrowing at the L3-4, L4-5, and L5-S1 levels. Tr. 210. He was prescribed Meloxicam, a nonsteroidal anti-inflammatory ("NSAID"), for pain. Tr. 203-13. In an Attending Physician's Statement dated November 6, 2007, Dr. Arendall noted that Plaintiff's arm and back pain would interfere with his attention and concentration and his ability to tolerate work stress. Tr.

213. He found that Plaintiff was capable of simple grasping (both hands), but could not push and pull or perform fine manipulation with either upper extremity. Tr. 213. By Dr. Arendall's estimation, Plaintiff would miss an average of four or more workdays per month. Tr. 213.

Dr. Arendall referred Plaintiff to James Kelly, III, M.D., for pain, numbness and tingling in his upper extremities. Tr. 206. In a letter dated March 13, 2006, Dr. Kelly expressed his opinion that Plaintiff suffered from carpal tunnel syndrome and pronator tunnel syndrome. Tr. 206. Upon physical examination, Plaintiff had a positive compression test of the wrist and pronator tunnel and a positive tinel's sign. Dr. Kelly ordered electromyography ("EMG") and nerve conduction velocity ("NCV") studies, but believed Plaintiff's condition would likely require a carpal tunnel and pronator tunnel release. Tr. 206. There is no evidence that Plaintiff followed through with these studies or received any further treatment from Dr. Kelly.

In a Physical Residual Functional Capacity ("RFC") Assessment dated August 24, 2007, Jerry Mann determined that Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand, sit, or walk for a total of about six hours in an eight-hour workday, and push/pull an unlimited amount, other than as shown for lift/carry. Tr. 214-21. Mann found no postural, manipulative, visual, communicative, or environmental limitations. Tr. 214-21.

On October 21, 2008, Plaintiff saw Robert L. Spray, Ph.D., for a psychological evaluation. Tr. 255-57. Plaintiff reportedly had problems in school and only completed the sixth grade. Tr. 255. He could not remember being in any special classes, but admitted having trouble reading and spelling. Tr. 255. He denied receiving any prior mental health treatment. Tr. 256. When asked about employment, Plaintiff said he worked as a tree trimmer for thirty years and left this position after being "electrocuted too good." Tr. 255. He had no difficulty getting along with his coworkers

and supervisors. Tr. 256.

Plaintiff reportedly had no difficulty with self-care. Tr. 256. He had no problems driving, but took his driving test five times before he passed. Tr. 256. He could mow the yard, do laundry, prepare meals, shop, do the dishes, and vacuum, although his wife handled the family's finances. Tr. 256. Physically, Plaintiff reported burning and tingling in his arms, which caused him to drop things. Tr. 256. He took pain medication, which did not alleviate his symptoms. Tr. 256.

Plaintiff was administered the Wechsler Adult Intelligence Scale-III ("WAIS-III"). Tr. 257. He attained a verbal IQ of 64, a performance IQ of 69, and a full-scale IQ of 63, which was within the mildly retarded range. Tr. 257. Dr. Spray diagnosed Plaintiff with mild dysthymia and mild mental retardation. Tr. 257. He noted that Plaintiff was socially awkward and had trouble persisting with tasks. Tr. 257.

### III.  Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d

614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

  To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.** <u>**Discussion**</u>

  At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since July 18, 2006, the alleged onset date. Tr. 49. At step two, she determined Plaintiff suffered from degenerative disc disease of the lumbar spine, carpal tunnel syndrome, and borderline intellectual functioning, all of which were severe under the Act. Tr. 49. At step three, she found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 49. At step four, the ALJ determined Plaintiff had the RFC to perform unskilled,

light work where he could frequently balance, climb ramps and stairs, and kneel, occasionally climb ladders, ropes, and scaffolds, occasionally stoop, crouch, and crawl, and frequently grasp, handle and finger objects. Tr. 52. After soliciting testimony from a vocational expert, the ALJ found Plaintiff could perform representative occupations such as laundry worker, of which there are 218,000 jobs nationally and 2,000 jobs regionally, small parts assembler, of which there are 111,000 jobs nationally and 1,300 regionally, and sorter/grader, of which there are 46,000 jobs nationally and 940 regionally. Tr. 56. Accordingly, the ALJ ended her analysis at step five and determined Plaintiff had not been under a disability at any time from July 18, 2007, through the date of her decision. Tr. 57.

Plaintiff contends the ALJ erred in: (1) finding his mental impairment did not meet Listing 12.05C; (2) improperly determining his RFC; and (3) dismissing his subjective complaints. Pl.'s Br. 6-18, ECF No. 12. For reasons discussed below, we reverse and remand for further development of the record with regard to Plaintiff's mental limitations.

    A. <u>Mental Retardation</u>

Mental retardation refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 CFR Pt. 404, Subpt. P, App. 1. To meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).

The first and third criteria are not at issue here. There is no dispute that Plaintiff received a full-scale IQ of 63 on the WAIS-III or that he suffers from degenerative disc disease and carpal

tunnel syndrome, which cause significant work-related limitations. Tr. 50, 257. Thus, we turn to the second criteria.

In finding Plaintiff had not sufficiently demonstrated onset before the age of 22, the ALJ noted that Plaintiff did not undergo psychological testing until October 21, 2008, when he was 49 years old. Tr. 50. The ALJ also found Plaintiff had not demonstrated deficits in adaptive functioning sufficient to meet Listing 12.05. Tr. 50. We agree.

A person's IQ is presumed to remain stable over time in the absence of any evidence of change in a claimant's intellectual functioning. *Muncy v. Apfel*, 246 F.3d 728, 734 (8th Cir. 2001). However, an ALJ "may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior." *Id.* at 733; *Clark v. Apfel*, 141 F.3d 1253, 1255-56 (8th Cir. 1998). Plaintiff did not initially claim mental retardation in his DIB and SSI applications. Tr. 129. In fact, he had never received mental health treatment prior to seeing Dr. Shry at his attorney's request. Tr. 256; *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005) (the absence of a treatment record, diagnosis, or even inquiry into a mental impairment prior to applying for benefits weighs against claimant).

Additionally, although Plaintiff had poor grades in school and dropped out in the seventh grade, there is no evidence that he had any difficulties with adaptive functioning. While in school, Plaintiff was never enrolled in special education classes. He testified that he worked as a tree trimmer for the same employer for thirty years. Tr. 21, 255. He never had any problems getting along with coworkers or supervisors. Tr. 255. He lived independently for three or four years between marriages. Tr. 256. He drives twenty miles on a daily basis to have coffee and visit with

his friends. T. 17. Sometimes, he drives his friends into town to go to the store. Tr. 17. These types of activities simply do not demonstrate deficits in adaptive functioning. Thus, we find no error in the ALJ's determination that Plaintiff does not meet Listing 12.05C.

 B. <u>RFC Assessment</u>

Next, Plaintiff asserts that the ALJ erred in his RFC determination. *See* Pl.'s Br. 10-18. On this we, we agree.

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

At step four, the ALJ determined Plaintiff had the RFC to perform unskilled, light work where he could frequently balance, climb ramps and stairs, and kneel, occasionally climb ladders, ropes, and scaffolds, occasionally stoop, crouch, and crawl, and frequently grasp, handle and finger objects. Tr. 52. Although she determined that Plaintiff suffers from borderline intellectual functioning at step two, which did not meet listing 12.05C, she did not find any mental limitations at the RFC stage. Tr. 52-55. She merely recounted Dr. Spray's evaluation and stated that Plaintiff's

borderline intellectual functioning would not limit his activities beyond the scope of her RFC assessment. Tr. 54. This was error.

We note there were no mental RFC assessments completed by any physicians or agency consultants. *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (reversible error for the ALJ not to order a consultative examination where such evaluation is necessary to make an informed decision). Dr. Spray evaluated Plaintiff, but did not complete a mental RFC assessment or determine Plaintiff's mental capabilities. He did note, however, that Plaintiff had trouble persisting with tasks. Tr. 257. In her psychiatric review technique, the ALJ found that Plaintiff had mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence or pace. Tr. 51-52. It necessarily follows that Plaintiff would experience some limitations as a result of these difficulties. If the ALJ found such limitations, she did not sufficiently convey them. *See Vincent v. Apfel*, 264 F.3d 767, 770 (8th Cir. 2001) (*cf. Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (even if clamant's borderline intellectual functioning was not of listing-level severity, claimant was entitled to have vocational expert consider this condition along with his other impairments to determine how it impacts upon his RFC). For this reason, remand for further development of the record is necessary. On remand, the ALJ should order a consultative psychological examination and make specific findings concerning Plaintiff's mental RFC. Once a sufficient mental RFC assessment has been made, the ALJ should elicit vocational expert testimony to determine what jobs, if any, Plaintiff can perform.

On a final note, we agree with the ALJ's physical RFC assessment. The ALJ properly dismissed Dr. Arendall's conclusory Attending Physician's Statement. Plaintiff's treatment record is sparse. *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (claimant did not diligently seek

medical care for alleged impairments). Dr. Arendall saw Plaintiff a total of eight times between 2005 and 2007, and several of these appointments were unrelated to his alleged impairments. Tr. 203-12. Additionally, Dr. Arendall consistently prescribed NSAIDs instead of pain medication. Tr. 203-12. If Plaintiff was as limited by pain as Dr. Arendall suggests, we assume he would prescribe stronger medications or send Plaintiff to a pain specialist. *Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (claimant's conservative treatment was inconsistent with allegations of disabling pain). Furthermore, Plaintiff failed to undergo studies necessary to determine the extent of his carpal tunnel and pronator tunnel syndromes. *See Dodson v. Astrue*, 346 Fed. Appx. 123, 124 (8th Cir. 2009) (failure to comply with treatment); *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992) (there was no evidence that claimant sought low-cost medical treatment). For these reasons, substantial evidence supports the ALJ's dismissal of Dr. Arendall's opinion. However, as earlier discussed, we remand for further development of the record as to Plaintiff's mental impairments.

V.      **Conclusion**

Accordingly, we conclude the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 8th day of December 2010.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE